<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RACHEL SIMNER, ROBERT DOMASCHUK, and MICHAEL ROSSIDIVITO, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.,<br><br>     Defendant. | Civil Action No: 21-13322(SDW)(CLW)<br><br>**OPINION**<br><br><br>August 8, 2022 |

**WIGENTON**, District Judge.

Before this Court is Defendant LG Electronics U.S.A., Inc.'s ("LG" or "Defendant") Motion to Dismiss Plaintiffs Rachel Simner and Robert Domaschuk, and Michael Rossidivito's (collectively, "Plaintiffs") Class Action Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1), 12(b)(6), and 9(b). Jurisdiction is proper pursuant to 28 U.S.C. § 1332, 15 U.S. C. § 2301, et seq., and 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Defendant LG Electronics, Inc. is a Delaware corporation, headquartered in Englewood Cliffs, New Jersey. (D.E. 13 ¶ 13.) Plaintiffs Simner and Domaschuk ("the Simner Plaintiffs") are residents of Illinois, and Plaintiff Rossidivito ("Rossidivito") is a resident of New Jersey. (*Id.*

¶¶ 14, 26.)  On January 7, 2017, the Simner Plaintiffs purchased an LG-manufactured dishwasher, model LDF5545ST, from Menards store in Naperville, Illinois, for $629.10.  (*Id.* ¶ 15.)  On April 28, 2018, Rossidivito purchased an LG-manufactured dishwasher, model LDP6797BB, from a website for Home Depot store, for $698.40.  (*Id.* ¶ 27.)  He also purchased a three-year extended warranty for the dishwasher.  (*Id.* ¶ 27.)  Plaintiffs allege that both dishwasher models, which were "QuadWash-enabled dishwashers," had "defective LED control panels."  (*Id.* ¶ 1.)  Plaintiffs contend that dishwasher models LDT7797, LDT5665, LDT5678, and LDT7808—also manufactured by Defendant—had the same allegedly defective control panels.[1]  (*Id.*)

A.  The Simner Plaintiffs

When the Simner Plaintiffs sought to purchase a dishwasher, they researched different models online and allege that Defendant's website advertised the dishwasher model LDF5545ST as "[a]mong the most energy-efficient dishwashers in its class," which had "energy and water-saving features . . . [that] would help reduce your energy and water consumption."  (*Id.* ¶ 16 (first and second alteration in original) (citing LG website).)  In early April 2017, about four months after the Simner Plaintiffs bought model LDF5545ST, the dishwasher began to turn off mid-cycle, and they had to restart the circuit breaker to restart the appliance.  (*Id.* ¶ 17.)  On April 4, 2017, the Simner Plaintiffs contacted Defendant to report the issue and request warranty service, and Defendant sent a repair technician to replace the dishwasher's control panel.  (*Id.* ¶ 18.)  In October 2017, the control panel began shutting off mid-cycle again.  (*Id.* ¶ 19.)  On October 5, 2018, approximately a year after the issue began to occur again, the Simner Plaintiffs hired an electrical

---

[1] Plaintiffs refer to the dishwashers at issue and the additional models that purportedly have the same control panels as "Class Dishwashers."  (*Id.* ¶ 1.)  While a class has not yet been established at this point in the litigation, for the sake of simplicity this Court will refer to the dishwasher models with the control panels at issue as Class Dishwashers or simply as dishwashers.

services company to make sure their electric service was working properly, and the company confirmed that it was.  (*Id.* ¶ 20.)  After that confirmation, the Simner Plaintiffs contacted Defendant for additional assistance, but Defendant would not send a technician without payment for the service.  (*Id.* ¶ 21.)  The Simner Plaintiffs opted not to pay for the service and instead requested that Defendant send a replacement control panel.  (*Id.* ¶ 22.)  Defendant initially agreed, but then declined to do so when the Simner Plaintiffs refused to pay for the device.  (*Id.*)  On June 10, 2020, the Simner Plaintiffs contacted Defendant again for service, and a company representative confirmed that the Simner Plaintiffs would have to pay for the technician and repair, which they refused to do.  (*Id.* ¶ 23.)  Thereafter, the Simner Plaintiffs attempted to return the dishwasher to Menards but were unsuccessful.  (*Id.* ¶ 24.)  Plaintiffs opted instead to replace the dishwasher with a new unit.  (*Id.*)

    B.  <u>Rossidivito</u>

When Rossidivito sought to purchase a dishwasher, he researched different models online and found that Defendant's website advertised the dishwasher model LDP6797BB as "[a]mong the most energy-efficient dishwashers in its class."  (*Id.* ¶ 28 (first and second alteration in original) (citing LG website).)  On July 9, 2018, approximately two months after he purchased model LDP6797BB, Rossidivito noticed that when he tried to put the dishwasher on another cycle, the control panel stopped working.  (*Id.* ¶ 30.)  He immediately notified Defendant about the problem. (*Id.* ¶ 31.)  Defendant sent a repair technician on July 12, 2018, and on July 25, 2018 the technician replaced the control panel.  (*Id.* ¶¶ 32–33.)  On December 29, 2018, the control panel shut down again, and Rossidivito contacted Defendant for assistance.  (*Id.* ¶ 34.)  Defendant sent a third-party technician to replace the control panel again.  (*Id.* ¶ 35.)  In December 2019, the dishwasher malfunctioned again and Rossadivito contacted Defendant on January 4, 2020 for assistance.  (*Id.*

¶¶ 36–37.)  Defendant sent a technician, who replaced the dishwasher's motor.  (*Id.* ¶¶ 37–38.)
On April 1, 2020, the dishwasher's motor failed again, Rossadivito contacted Defendant for
assistance, and a technician again repaired the motor.  (*Id.* ¶¶ 39–40.)  On April 8, 2021, the control
panel shut off again, Rossadivito contacted Defendant for assistance, and a company technician
replaced the control panel again.  (*Id.* ¶¶ 41–42.)  On April 28, 2021, "Rossadivito's extended
three-year warranty expired."  (*Id.* ¶ 43.)  On November 6, 2021, the control panel failed again.
(*Id.* ¶ 44.)  Because his warranty had expired, and because of the difficulties he had experienced
with the dishwasher, Rossadivito did not contact Defendant for repair and instead purchased a new
dishwasher.  (*Id.* ¶¶ 44–45.)

     C.  <u>Allegations</u>

     Plaintiffs allege that Defendant's "ubiquitous marketing campaigns lead consumers to
believe that Class Dishwashers are high quality, efficient, and dependable," but the dishwashers
"do not work as advertised or promoted."  (*Id.* ¶¶ 56–57.)  Plaintiffs further contend that the Class
Dishwashers have an "internal design, assembly, and mechanical engineering" defect that
manifests "during the expected useful life of the [d]ishwasher," and in turn deprives consumers of
a functioning unit.  (*Id.* ¶¶ 58–60; *see also* ¶¶ 80–81.)  The defect, Plaintiffs assert, causes "water
[to] seep[] into the [c]ontrol [p]anel," which causes a malfunction of the dishwasher.  (*Id.* ¶ 58.)

     Plaintiffs also maintain that Defendant "knew or had reason to know that the Class
Dishwashers suffer from the [c]ontrol [p]anel [d]efect," but has failed to fix the defect, and has
failed to reimburse consumers for repairs and replacement.  (*Id.* ¶¶ 65–67.)  A service bulletin that
Defendant issued in 2018, Plaintiffs allege, "provided a purported solution to the [c]ontrol [p]anel
[d]efect," which, in turn, suggests that Defendant was aware of the defect before 2018.  (*Id.* ¶¶ 72–
76.)  Plaintiffs contend that the purported solution, however, was ineffective.  (*Id.* ¶ 77.)  Plaintiffs

allege that Defendant continues to market and sell the dishwashers despite knowing or having reason to know that the control panels are defective, and that Defendant continues to conceal the existence of the defect from consumers, which should toll any statutes of limitations.  (*Id.* ¶¶ 94–112.)

Plaintiffs note that Defendant provides a limited one-year warranty for the Class Dishwashers, which covers "defect[s] in materials or workmanship under normal home use . . . ." (*Id.* ¶¶ 82–83 (alterations in original) (citing Owner's Manual, LG).)  Defendant also provides a five-year electronics and racks warranty, a ten-year Direct Drive motor warranty, and a limited lifetime tub warranty.  (*Id.* at ¶ 83.)  Plaintiffs argue that Defendant has violated the warranties in various ways, including failing to fix the control panel issue, charging for parts and labor after the warranty has expired, charging diagnostic and service fees, and providing ineffective and inadequate warranty repairs.  (*Id.* ¶¶ 84–89.)

Finally, Plaintiffs allege that there are three potential classes pertaining to the class action allegations:  (1) a Nationwide Class, which includes consumers in the United States who purchased one or more Class Dishwasher(s); or, in the alternative, (2) an Illinois Subclass, which includes consumers in Illinois who purchased one or more Class Dishwasher(s), and  (3) a New Jersey Subclass, which includes consumers in New Jersey who purchased one or more Class Dishwasher(s) ("State Subclasses").  (D.E. 13 ¶ 113.)

D.  Procedural History

On July 2, 2021, Plaintiffs filed a putative class action suit in this Court, asserting various claims.  (*See* D.E. 1.)  Defendant filed a Motion to Dismiss on October 7, 2021.  (*See* D.E. 10.)  On November 22, 2021, Plaintiff filed an Amended Complaint, (D.E. 13), asserting the following claims:  Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

(Count I) (Simner Plaintiffs/Illinois Subclass); Violations of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Count II) (Simner Plaintiffs/Illinois Subclass); Violations of the New Jersey Consumer Fraud Act ("NJCFA") (Count III) (Rossidivito/New Jersey Subclass); Breach of Written Warranty Under the Magnuson-Moss Warranty Act ("MMWA") (Count IV) (Nationwide Class/State Subclasses); Breach of Express Warranty (Count V) (Nationwide Class/State Subclasses); Breach of Implied Warranty of Merchantability (Count VI) (Nationwide Class/State Subclasses); Common Law Fraud (Count VII) (Nationwide Class/State Subclasses); and Unjust Enrichment (Count VIII) (Nationwide Class/State Subclasses).  (*See* D.E. 13.)  Defendant moved to dismiss on January 13, 2022, and the parties completed timely briefing.  (*See* D.E. 17, 20, 22.)

## II.    LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 235–36 (3d ed. 2004)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief" (quoting *Twombly*, 550 U.S. at 555)).

When considering a Motion to Dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).  A plaintiff "alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M & T Bank Corp.,* No. 09-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (alteration in original) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

## III.    DISCUSSION

### A.  Standing

The first consideration in this matter is whether Plaintiffs have standing to pursue claims regarding putative Class Dishwashers they did not purchase.  Article III of the United States Constitution limits the power of the federal judiciary to the adjudication of actual "cases" or "controversies." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982).  To enforce

the "case" or "controversy" requirement, Article III requires that a litigant "have 'standing' to invoke the power of a federal court . . . ." *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing, therefore, is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A plaintiff has standing to sue if:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The timing of a standing analysis, however, may at times be different in the context of a class action. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (cautioning that because "'class certification issues are dispositive,' . . . [and] their resolution . . . is logically antecedent to the existence of any Article III issues, it is appropriate to reach them first") (internal citations omitted)). "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991) (citing *Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990); *Singleton v. Wulff*, 428 U.S. 106 (1976)). "In the class action context, however, traditional notions of standing are not completely informative of what claims may be asserted." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005) (citing *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1088–89 (3d Cir. 1975)). When "addressing whether a plaintiff may assert claims in a putative class action regarding products the plaintiff did not personally purchase or use, courts

in this District often hold that 'the standing issue becomes ripe only in the context of a motion for class certification.'" *Cannon v. Ashburn Corp.*, No. 16-1452, 2016 WL 7130913, at *4 (D.N.J. Dec. 7, 2016) (quoting *Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478, 482 (D.N.J. 2013) (collecting cases). When making that assessment, a court will consider whether "a plaintiff may have standing to assert claims on behalf of putative class members regarding products they did not personally purchase where (1) the basis of the claims is the same, (2) the products are closely related, and (3) the claims are against the same defendants." *Id.* (citing *Stewart v. Smart Balance, Inc.*, No. 11-6174, 2012 WL 4168584, at *16 (D.N.J. June 26, 2012) (hereinafter, the "*Haas* test")).

Here, Defendant concedes that Plaintiffs have standing to assert claims concerning the specific dishwasher models that each Plaintiff purchased. While the issue of whether Plaintiffs have standing to assert claims concerning dishwasher models they did not purchase would not typically be not ripe at this juncture, based on the facts set forth in the Complaint, Plaintiffs' pleading cannot satisfy the *Haas* test because the facts reveal that the basis of the claims is not exactly the same. *See Cannon*, 2016 WL 7130913, at *4 (discussing the elements of the *Haas* test). The Simner Plaintiffs allege that the dishwasher's control panel began to shut the unit off mid-cycle, and they had to restart the circuit breaker, which led them to wonder if their home's electricity was not working properly. Defendant then replaced the control panel. ((D.E. 13 ¶¶ 17–20.) Rossidivito's experience was different; his unit shut down completely and the control panel had to be replaced three times, and the motor had to be replaced two times. (*Id.* ¶¶ 30–44.) These issues may be similar in that they both involve the dishwashers malfunctioning, and both units had an apparent control panel malfunction, but the different manifestations of issues and the different repairs that were required to fix the dishwashers—multiple control panels *and* motors for

Rossadivito's unit—reveal that the issues may be similar in some facets, but not demonstrably the same.

Further, Plaintiffs have not adequately demonstrated that the basis of the claims would be the same for models they did not purchase, including models LDT7797, LDT5665, LDT5678, and LDT7808. Those products might have components related to the two models at issue, and the claims would involve the same Defendant, but the Complaint fails to allege particularized facts that demonstrate that the basis of the claims is the same, and therefore is not sufficiently pleaded for such a broad application. This Court finds that Plaintiffs do not have standing to bring claims on behalf of purchasers of models LDT7797, LDT5665, LDT5678, and LDT7808, and the claims pertaining to those models are dismissed. Plaintiffs have standing to bring potential claims on behalf of purchasers of model LDF5545ST (the Simner Plaintiffs) and model LDP6797BB (Rossidivito)—the dishwasher models Plaintiffs themselves purchased and used. At the class certification stage Plaintiffs will have the burden of proving that the case is appropriately brought as a class action.

B. Choice of Law

The next issue this Court must address is which state law applies to the four state common-law claims that Plaintiffs raised—Breach of Warranty (Count V), Breach of Implied Warranty of Merchantability (Count VI), Common Law Fraud (Count VII), and Unjust Enrichment (Count VIII).[2] As a federal court sitting in diversity, this Court applies the choice-of-law rules of New Jersey to determine which state law controls. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 109 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S.

---

[2] Because the putative class has not yet been certified, this action is "one between [the named plaintiffs] and the defendant[]" and must be evaluated as to each particular plaintiff. *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 659 (3d Cir. 1998).

487, 496 (1941)); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) (citing *Klaxon Co.*, 313 U.S. at 496; *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008)).  "New Jersey has adopted the [two-part] 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws."  *Maniscalco*, 709 F.3d at 206 (quoting *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459–60 (N.J. 2008)).  The first step of the inquiry "is to determine whether an actual conflict exists."  *Camp Jaycee*, 962 A.2d at 460.  "That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them."  *Id.*  (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)).  "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same."  *Lebegern*, 471 F.3d at 428.  "If, however, an actual conflict is found to exist, the inquiry proceeds to the second step."  *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010).  The second step requires a court to determine "which jurisdiction has the 'most significant relationship' to the claim."  *Maniscalco*, 70 F.3d at 207 (quoting *Camp Jaycee*, 962 A.2d at 461).  "To make that determination, courts look to the Second Restatement, which 'provides specific guidance for resolving particular types of cases.'"  *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544, 2018 WL 4144683, at *5 (D.N.J. Aug. 29, 2018) (quoting *Camp Jaycee*, 962 A.2d at 458).

Here, the potentially applicable state laws are Plaintiffs' home states (Illinois and New Jersey), and New Jersey (the forum state and location of Defendant's headquarters).  The first step of the most significant relationship test reveals that, when analyzing Illinois state law and New Jersey state law, conflicts exist on all four of the common law claims.  On the warranty claims, Illinois requires pre-suit notice, but New Jersey does not require such notice for a remote seller.  *Compare O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 715 (N.D. Ill. 2020), *with Powell v.*

*Subaru of Am., Inc.*, 502 F. Supp.3d 856, 881 (D.N.J. 2020).  Additionally, Illinois requires privity and New Jersey does not.  *Compare Mekertichian v. Mercedes-Benz U.S.A.*, L.L.C., 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004) (noting that "implied warranties give a buyer of goods a potential cause of action only against his immediate seller" (citations omitted)), *with Dzielak v. Whirlpool Corp.*, 26 F. Supp.3d 304, 322, 327–28 (D.N.J. 2014) (noting that New Jersey law does not require privity for express or implied warranty claims).  On the common law fraud claim, each state has a different statute of limitations.  *Compare* 735 ILL. COMP. STAT. § 5/13-205 (5 years), *with* N.J. STAT. ANN. § 2A:14-1 (six years).  Similarly, on the unjust enrichment claim, each state has a different statute of limitations.  *Compare* 735 ILL. COMP. STAT. § 5/13-205 (5 years), *with* N.J. STAT. ANN. § 2A:14-1 (six years). *See also Emerson Radio Corp. v. Fok Hei Yu*, No. 20-01618, WL 1186824, at *3 (D.N.J. Mar. 30, 2021) (finding that different statute of limitations periods constituted conflict).  Each of these claims has an apparent conflict of laws, thus the analysis proceeds to the second step.

Because actual conflicts exist between Illinois and New Jersey law, this Court must next determine which state has the "most significant relationship" to the individual claims at issue. *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 180 (3d Cir. 2014) ("New Jersey has adopted 'the most significant relationship' test set out in the Restatement (Second) of Conflict of Laws." (citing *Camp Jaycee*, 962 A.2d at 459–60)). Because the claims at issue in this matter sound in fraud or misrepresentation, this Court "applies the conflict of laws analysis of Section 148." *Shapiro v. Logitech, Inc.*, No. 17-00673, 2019 WL 397989, at *7 (Jan. 31, 2019) (citing Restatement (Second) of Conflict of Laws § 148 (1971)).  The Restatement provides a guideline analysis using the following six factors:

> (a) the place, or places where the plaintiff acted in reliance upon the defendant's representations,

    (b) the place where the plaintiff received the representations,
    (c) the place where the defendant made the representations,
    (d) the domicil[e], residence, nationality, place of incorporation and place
        of business of the parties,
    (e) the place where a tangible thing which is the subject of the transaction
        between the parties was situated at the time, and
    (f) the place where the plaintiff is to render performance under a contract
        which he has been induced to enter by the false representations of the
        defendant.

*Grandalski* , 767 F.3d at 181 (quoting Restatement (Second) of Conflict of Laws § 148(2)).

Applying the test here, Plaintiffs relied on and received the representations in each respective home state, Defendant made the representations in each Plaintiff's respective home state, and the tangible items were situated in each Plaintiff's respective home state. The balance of factors weighs heavily in favor of Illinois law applying to the Simner Plaintiffs' fraud and misrepresentation claims, and New Jersey law applying to the Rossidivito Plaintiff's fraud and misrepresentation claims, as discussed below.

Plaintiffs' contract claims are analyzed under another set of factors. Section 188 of the Restatement (Second) of Conflict Laws provides that Courts consider the following factors: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp.2d 691, 704 (D.N.J. 2011) (citation omitted).

Here, Plaintiffs and Defendant negotiated and contracted in each Plaintiff's respective home state, performance occurred in each respective home state, and the subject matter of the contract existed in each respective home state. The balance weighs in favor of each Plaintiff's home state law applying to the contract claims, as analyzed below.

13

C. Warranty Claims

    1. Breach of Express Warranty (Count V)

        a. Simner Plaintiffs

Under Illinois law, "[e]xpress warranties are contractual in nature." *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. App. Ct. 4th Dist.1989) (citing *Alan Wood Steel Co. v. Cap. Equip. Enters., Inc.*, 349 N.E.2d 627, 632 (Ill. App. Ct. 1976)). "In an express warranty action, plaintiff must show breach of an affirmation of fact or promise [that] was made part of the basis of the bargain." *Id.* (citing *Redmac, Inc. v. Computerland of Peoria*, 489 N.E.2d 380 (Ill. App. Ct. 1986); *Stamm v. Wilder Travel Trailers*, 358 N.E.2d 382 (Ill. App. Ct. 1976)). Further, "[s]ince express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Oggi Trattoria and Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340 (Ill. App. Ct. 2007) (quoting *Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 634 (Ill. App. Ct. 2001)). In a breach of express warranty action, a plaintiff must

> show by a preponderance of the evidence the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the terms of the warranty, a failure of the defendant to do so, a compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty.

*Id.* (quoting *Hasek*, 745 N.E.2d at 638.) Importantly, "Illinois law holds that express warranties of limited duration cover only defects that become apparent during the warranty period." *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d. 942, 950 (Ill. App. Ct. 2005) (citing *Tokar v. Crestwood Imps., Inc.*, 532 N.E.2d 382, 389 (Ill. App. Ct. 1988)). Allowing a customer to press a warranty claim for product failures extending past the delineated time limit "would in effect compel the manufacturer to insure all latent defects for the entire life of the product and would

place a burden on the manufacturer for which it did not contract." *Id.* (citing *Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1536 (D.D.C. 1984)).

Here, the Simner Plaintiffs reached out to Defendant on April 4, 2017 to request repair, and Defendant repaired the control panel, as the unit was under warranty. (D.E. 13 ¶ 18.) Although the dishwasher reportedly began experiencing issues again in October 2017, the Simner Plaintiffs did not contact Defendant for additional repairs until October 2018—well after the one-year limited warranty had expired—but declined service after discovering they would have to pay for the service. (*Id.* ¶¶ 20–21.) The Simner Plaintiffs then requested a replacement control panel, which Defendant initially agreed to send, but then declined to do so. (*Id.* ¶ 22.) Because Plaintiffs failed to call to report the recurrence of the problem in October 2017, Defendant had one opportunity during the one-year limited warranty to repair the issue. Plaintiffs, however, contend that Defendant was well aware of the issue prior to the repair, and that its repair was "not a fix, it[] [was] a temporary repair that deprives Plaintiffs of the benefit of their bargain." (D.E. 20 at 26 (citing *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 611 (D.N.J. 2013; *Van Zeeland v. McNally*, 532 F. Supp. 3d 557, 565 (N.D. Ill. 2021)). Plaintiffs further contend that Defendant had an obligation to send a replacement control panel in October 2018, considering the electronics had a five-year warranty, and that Defendant breached that warranty when it cancelled the order for the replacement panel. (D.E. 20 at 27; *see also* D.E. 13 ¶ 180 (discussing the various warranties at issue).)

Considering the facts in a light favorable to Plaintiffs, the Simner Plaintiffs have pleaded adequate facts to support this count. This Court cannot determine whether Defendant had sufficient knowledge of the defect during the warranty period and made a reasonable attempt to repair the control panel defect or not, and cannot determine whether Defendant breached the

express warranty. "Even though 'Illinois law does require a manufacturer to make successful repairs within a reasonable time or a reasonable number of attempts,' the determination of reasonableness is a factual determination." *Van Zeeland*, 532 F. Supp. 3d at 565 (quoting *Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 238 (Ill. App. Ct. 2004)). This Court finds that "a determination as to whether a warranty failed its essential purpose is a factual inquiry premature at the motion to dismiss stage." *Id.* (citing *In re Rust-Oleum Restore Mktg., Sales Pracs. and Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 789 (N.D. Ill. 2016)). Thus, as to the Simner Plaintiffs, the breach of express warranty claim may proceed in due course.

      b.  <u>Rossidivito</u>

Under New Jersey law, a party seeking to state a claim for express warranty must allege: "(1) that [the d]efendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Francis E. Parker Mem. Home, Inc. v. Georgia-Pacific, LLC*, 945 F. Supp. 2d 543, 568 (D.N.J. 2013) (citing *Arlandson*, 792 F. Supp.2d at 706). New Jersey law also requires a plaintiff to give pre-litigation notice of warranty claims, such that "the buyer must within a reasonable time after he [or she] discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.J. STAT. ANN. § 12A:2-607(3)(a); *see also Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012) (stating that "statutory notice is a condition precedent to filing any suit for breach of warranty" (quoting *Joc, Inc. v. Exxonmobil Oil Corp.*, No. 08-5344, 2010 WL 1380750, at *4 (D.N.J. Apr. 1, 2010))); *Palmieri v. Intervet, Inc.*, No. 19-22024, 2021 WL 2205854, at *9 (D.N.J. June 1, 2021).

16

Here, Rossidivito contacted Defendant multiple times for repairs during the warranty period, after the dishwasher continually failed to perform.  (*See* D.E. 13 ¶¶ 30–44.)  Defendant does not allege a failure of notice.  (*See* D.E. 17-1 at 43–44.)  Defendant instead argues that Rossidivito does not plausibly allege a breach of warranty because he acknowledges that Defendant repaired the dishwasher each time that he requested repair during the warranty period.  (*See* D.E. 17-1 at 43–44.)  In response, Plaintiff argues that Defendant breached the express warranty "[b]y failing to actually repair [Rossidivito's] [d]ishwasher despite multiple opportunities to do so . . . ."  (D.E. 20 at 30 (citing *Kuzian*, 937 F. Supp. 3d at 611).)  Considering the facts in relation to *Kuzian*, Plaintiff provides a compelling argument.  Viewing the facts in a light favorable to Plaintiff, at this stage of the litigation, Plaintiff has adequately pleaded facts to support the claim.  This Court cannot definitively determine whether Defendant made a reasonable attempt to repair the multiple defects of the dishwasher or not, and cannot determine whether Defendant breached the express warranty; those determinations are not appropriate at this stage.  Rossidivito's breach of express warranty claim may proceed in due course.

### 2. Breach of Implied Warranty of Merchantability (Count VI)

#### a. Simner Plaintiffs

The Simner Plaintiffs concede that this claim should be dismissed, but request that this Court dismiss the claim without prejudice.  (D.E. 20 at 9 n.1.)  Defendant points out that the claim should be dismissed with prejudice because "[i]t fails as a matter of law both for privity and timeliness" and the deficiencies cannot be cured.  (D.E. 17-1 at 44–46; D.E. 22 at 18.)  Illinois law requires privity between a plaintiff and a defendant to recover for breach if implied warranty.  *See Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1121–22 (N.D. Ill. 2019).  Privity does not exist here since the Simner Plaintiffs purchased the unit from a third-party seller.  (*See* D.E. 13

¶ 15.)  Additionally, Defendant argues that the claim is time-barred.  (D.E. 17-1 at 5–46.)  Illinois law provides a four-year statute of limitations for breach of implied warranty claims, which begins when the product is delivered to the buyer.  *See* 810 ILL. COMP. STAT. § 5/2-725(1); *see also Richards v. Eli Lilly & Co.*, 355 F. App'x 74, 75 (7th Cir. 2009) (citing *Ridle v. Sprayrite Mfg. Co.*, 555 N.E.2d 1272, 1273 (Ill. App. Ct. 1990); *Nelligan v. Tom Chaney Motors, Inc.*, 479 N.E.2d 439, 442 (Ill. App. Ct. 1985)).  Here, the statute of limitations began to run in January 2017, when the Simner Plaintiffs took delivery of the dishwasher.  (D.E. 13 ¶ 15.)  Plaintiffs, however, did not file suit until July 2021, (D.E. 1), thereby exceeding the statute of limitations by approximately six months.  Because the Simner Plaintiffs cannot establish privity and failed to file within the statute of limitations, this Court finds these defects incurable and dismisses this particular claim with prejudice.

b.  Rossidivito

Per New Jersey law, "the implied warranty of merchantability and the warranty of fitness for a particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose."  *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992) (citing *Vlases v. Montgomery Ward & Co.*, 377 F.2d 846, 849 (3d Cir. 1967)).  The implied warranties of merchantability and fitness for a particular purpose "protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose."  *Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 509 (D.N.J. 2012) (quoting *Altronics of Bethlehem*, 957 F.2d at 1105).  "To establish a breach of either warranty, [p]laintiffs 'must show that the equipment they purchased from defendant was defective.'"  *Crozier*, 901 F. Supp. 2d at 509 (quoting *Altronics of Bethlehem, Inc.*, 957 F.2d at 1105).  To that end, establishing either breach "requires a showing

regarding the product's functionality, not the advertisements that allegedly induced a customer to purchase it." *Crozier*, 901 F. Supp. 2d at 509.   Additionally, pre-suit notice is required for claims for breach of implied warranties.  *See Hammer*, 2012 WL 1018842 at *10 (stating that "statutory notice [pursuant to N.J. STAT. ANN. § 12A:2-607(3)(a)] is a condition precedent to filing any suit for breach of warranty") (citation omitted); *see also Palmieri*, 2021 WL 22058454 at *9–10.

Here, Defendant does not allege that Plaintiff failed to meet the notice requirement.  (*See* D.E. 17-1 at 35–36.)  Defendant argues that "the general purpose of Rossadivito's dishwasher was to clean dishes," and alleges that Rossidivito does not dispute that the dishwasher accomplished that purpose.  (D.E. 17-1 at 47.)  Rossidivito, however, does not agree with that assessment and argues that Defendant breached the implied warranty of merchantability because the dishwasher "shut down completely" and the alleged defect "rendered Plaintiff Rossadivito's dishwasher completely inoperable and incapable of performing its ordinary purpose—washing dishes— on multiple occasions."  (D.E. 20 at 33.)  Viewing the facts in a light most favorable to Rossidivito, this Court finds that he has plausibly pleaded that the defect may have prevented the dishwasher from accomplishing its general purpose.  The analysis, however, does not end there.

Defendant stresses that it provided a disclaimer to the implied warranty of merchantability, and that the disclaimer was conspicuous as it appeared in all capital letters.  (*Id.* at 46–47.)  New Jersey law allows for "[t]he complete exclusion of implied warranties, including warranties of merchantability and of fitness for a particular purpose."  *Gladden v. Cadillac Motor Car Div., Gen. Motors Corp.*, 416 A.2d 394, 399 (N.J. 1980).  "[T]o effect the exclusion of an implied warranty of merchantability, the language must be clear and conspicuous."  *Id.* (citing N.J. STAT. ANN. § 12A:2-316).  To be conspicuous, "[a] term or clause [must be] so written that a reasonable person

against whom it is to operate ought to have noticed it."  *Id.* (citing N.J. STAT. ANN. § 12A:1-201(10); N.J. STAT. ANN. § 12A:1-201, Comment 10).

Rossidivito argues that the disclaimer was not conspicuous because it appeared on page 51 of the "Owner's Manual," and that the language was complicated with legal terms.[3]  (D.E. 20 at 33–34.)  It is likely, however, that a reasonable consumer having performance issues with his or her dishwasher—especially multiple repairs, as occurred in Rossidivito's case—would seek to review the warranty to understand whether repairs are covered.  In this circumstance, the page placement of the warranty with disclaimer is of no moment considering the manual's table of contents appears on the second page of the manual and specifically notes on which page to find the warranty.  (D.E. 1-2 at 3.)  Plaintiff does not suggest a more conspicuous or more logical placement location for the disclaimer, and this Court does not presume to fill that void in the analysis.  Further, the disclaimer's phrasing, "THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED," is sufficiently understandable and, therefore, acceptable. *See Moulton v. LG Elecs. USA, Inc.*, No. 11-4073, 2012 WL 3598760, at *1–2 (D.N.J. Aug. 21, 2012) (upholding similar disclaimer language).  Because Defendant displayed the disclaimer in

---

[3] The disclaimer provides:

> THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULR PURPOSE.  TO THE EXTENT ANY IMPLIED WARRANTY IS REQUIRED BY LAW, IT IS LIMITED IN DURATION TO THE EXPRESS WARRANTY PERIOD ABOVE.  NEITHER THE MANUFACTURER NOR ITS U.S. DISTRIBUTOR SHALL BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL, OR PUNITIVE DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, LOST REVENUES OR PROFITS, OR ANY OTHER DAMAGE WHETHER BASED IN CONTRACT, TORT, OR OTHERWISE.

(D.E. 1-2 at 52.)

capital letters in a logical, accessible place within the manual, and because the disclaimer's language—while legal in nature—is clear and understandable, this Court finds that Defendant successfully excluded the implied warranty of merchantability.  This particular claim as to Rossidivito is therefore dismissed.

      3.  <u>Magnuson-Moss Warranty Act ("MMWA") (Count IV)</u>

The MMWA "provides a private right of action in federal court for consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty.'" *Trexler v. Dodge City, Inc.*, No. 20-6983, 2021 WL 754004, at *5 (D.N.J. Feb. 26, 2021) (alterations in original) (quoting 15 U.S.C. § 2310(d)(1)).  As a result, "[c]laims under the MMWA depend upon the disposition of the underlying state law warranty claims." *DeFillippo v. Whirlpool Corp.*, No. 18-1252, 2019 WL 4127162, at *14 (D.N.J. Aug. 30, 2019).  Therefore, to state a claim under the MMWA, a plaintiff must first adequately plead a claim for breach of warranty under state law. *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008) (dismissing MMWA claim where state law warranty claim had already been dismissed and noting that MMWA claims are "dependent on state law claims").  Additionally, the MMWA provides that "No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C).

Here, in relation to both the Simner Plaintiffs and Rossidivito, Defendant argues that "Plaintiffs' MMWA claim does not meet the jurisdictional requirement" of having a minimum of one-hundred named plaintiffs.  (D.E. 17-1 at 48–49; D.E. 22 at 19–20.)  Plaintiffs counter that the Class Action Fairness Act ("CAFA") provides an avenue for jurisdiction even when plaintiffs do

not satisfy MMWA's 100-named-plaintiff requirement.  (D.E. 20 at 36.)  Several courts in this District have determined that litigants "may not use CAFA as a means to evade the explicit jurisdictional requirements of the MMWA."  *Powell*, 502 F. Supp. at 885; *see also In Re Subaru Battery Drain Products Liability Litigation*, No. 20-03095, 2021 WL 1207791, at *19 (D.N.J. Mar. 31, 2021); *Wesley v. Samsung Elecs. Am., Inc.*, No. 20-18629, 2021 WL 5771738, at *8–9 (D.N.J. Dec. 3, 2021).  *Contra Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2007 WL 4591281, at *7–8 (D.N.J. Dec. 28, 2007 (holding that "although [P]laintiff[ ] cannot satisfy the Magnuson–Moss jurisdictional requirements because they do not have 100 named plaintiffs, th[is][C]ourt has jurisdiction based on [P]laintiff['s] allegations of federal jurisdiction under CAFA." (alterations in original) (quoting *Brothers v. Hewlett–Packard Co.*, No. 06-2254, 2007 WL 485979, at *8 (N.D. Cal. Feb. 12, 2007)); *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 n.4 (D.N.J. 2011) (collecting cases).

This Court is persuaded by the *Powell* holding, which conveys that interpreting "'CAFA to provide jurisdiction over MMWA claims despite [p]laintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMW[A]' — and . . . there is no 'clear and manifest' showing of Congress's intent to do so."  *Powell*, 502 F. Supp. 3d at 885 (quoting *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020)).  As such, Plaintiffs' MMWA claims cannot meet the jurisdictional requirement and must be dismissed without prejudice.  Because of this dispositive conclusion, this Court does not address viability arguments concerning Plaintiffs' MMWA claims.

    D.  <u>Fraud Claims</u>

        1.  <u>Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count I) and Common Law Fraud (Count VII) as to the Simner Plaintiffs</u>

"The ICFA 'is a regulatory and remedial statute intended to protect consumers, borrowers, and business[]persons against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). The statute

> prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

*O'Connor*, 477 F. Supp. 3d at 717–18 (alterations in original) (quoting 815 ILL. COMP. STAT. § 505/2). To establish a claim under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; and (4) the defendant's conduct is the proximate cause of plaintiff's injury." *Vangsness v. Deutsche Bank Nat. Trust Co.*, No. 12-50003, 2013 WL 3031017, at *5 (N.D. Ill. June 17, 2013) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)). Such claims must be pleaded with specificity, pursuant to Rule 9(b). *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 822 (N.D. Ill. 2016) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)), *aff'd*, 845 F.3d 802 (7th Cir. 2017). "In such cases, 'a plaintiff must allege with particularity the who, what, when, where, and how of the fraud or misrepresentation.'" *Id.* (quoting *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 909 (N.D. Ill. 2012)).

To adequately plead a common law fraud claim under Illinois law, a plaintiff must allege:

> (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a

23

> duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his [or her] injury.

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 989 (N.D. Ill. 2006) (quoting *Trs. of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002)). Additionally, a plaintiff must allege that a defendant had a duty to disclose the defect. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). That duty arises where either a plaintiff and a defendant are in a confidential or fiduciary relationship, or where the plaintiff "places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* The second kind of relationship "may arise by reason of friendship, agency, or experience." *Id.*

Here, the Simner Plaintiffs allege that Defendant had "exclusive or superior knowledge of the defect," "intentionally concealed material information from consumers," "made misrepresentations that were rendered misleading," and "acted unscrupulously in a manner that is substantially oppressive and injurious to consumers." (D.E. 13 ¶ 128.) Plaintiffs also allege that Defendant "misrepresented that [the dishwashers] are energy efficient when they are not," due to the defect at issue, and allege that Plaintiffs "suffered ascertainable loss as a direct and proximate result of [Defendant's] unfair and deceptive acts and practices." (*Id.* ¶¶ 131, 134.) Defendant suggests that its claim of energy efficiency was "squarely within the scope of puffing," and that Plaintiffs have not sufficiently alleged specific facts indicating knowledge of the defect prior to Plaintiffs' purchase, and that Plaintiffs have made conclusory allegations. (D.E. 17-1 at 16–21.)

When considering the Simner Plaintiffs' allegations in light of the heightened pleading requirement for each fraud claim, this Court finds that Plaintiffs' allegations are conclusory and are not sufficiently particularized.  Plaintiffs' allegations do not include specifics about any warranty claims or testing that would demonstrate the knowledge Plaintiffs allege.  (*See id.* ¶¶ 136–44.)  Essentially, Plaintiffs allege *that* Defendant knew of issues with the dishwasher at the time of Plaintiffs' purchase and committed misrepresentation and deception, but do not adequately plead *how* Defendant knew and did so.  *See Hart*, 191 F. Supp. 3d at 822.  This Court does not consider Defendant's puffing contention because in the absence of sufficiently pleaded allegations, such analysis would be superfluous.

Additionally, Plaintiffs fail to plead facts that support a common law duty to disclose, either due to fiduciary relationship between the parties, or due to Plaintiffs placing their trust and confidence in Defendant and putting it in a position of influence and superiority.  *See Connick*, 675 N.E.2d at 593.  Plaintiffs allege that Defendant "had a duty to disclose the true quality of the Class Dishwashers because the knowledge of the [defect] and its details were known and/or accessible only to [Defendant]."  (D.E. 13 ¶ 106; *see also* D.E. 13 ¶¶ 209–17 (general fraud allegations).)  This allegation does not provide information adequate to demonstrate that Defendant's relationship with Plaintiffs is of a nature that gives rise to a duty to disclose. *See Connick*, 675 N.E.2d at 593.

Consequently, this Court finds that the allegations pertaining to the fraud counts are conclusory and insufficiently pleaded and are therefore dismissed.

2.   Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Count II)

The IUDTPA "provides a private right of action for injunctive relief, and such a claim is permissible as a consumer action when 'the consumer can allege facts indicating [a] likelihood of

damage in the future.'" *Aliano v. Louisville Distilling Co.*, 115 F. Supp. 3d 921, 928 (N.D. Ill. 2015) (alteration in original) (quoting *Robinson v. Toyota Motor Credit Corp.*, 735 N.E.2d 724, 735 (Ill. App. Ct. 2000)).   The IUDTPA requires a plaintiff to "demonstrate that a defendant engaged in any of the [twelve] enumerated types of conduct listed in Section 510/2." *Int'l Star Registry of Ill.*, 451 F. Supp. 2d at 990 (citing 815 ILL. COMP. STAT. § 510).   "The problem in most consumer actions under the [IUDTPA] is the inability to allege facts indicating the likelihood of damage in the future." *Aliano* , 115 F. Supp. 3d at 928 (quoting *Howard v. Chi. Transit Auth.*, 931 N.E.2d 292, 299 (Ill. App. Ct. 2010)).   This inability is especially problematic with cases alleging deceptive practices, because the harm from those practices has usually already occurred. *Int'l Star Registry of Ill.*, 451 F. Supp. 2d at 991. (explaining that "proving the likelihood of future harm is difficult because once the consumer has knowledge about the defendant's actions, it can easily protect itself in the future by avoiding the harm") (citing *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1156 (Ill. App. Ct. 1992)).

Here, the Simner Plaintiffs allege that Defendant violated the specific IUDTPA provisions prohibiting "'represent[ation] that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have . . . " and 'represent[ation] that goods or services are of a particular standard, quality, or grade . . . if they are of another . . . .'"   (D.E. 13 ¶ 139 (citing 815 ILL. COMP. STAT. § 510/2(a)(5), (7)).   Plaintiffs allege, in sum, that Defendant marketed defective dishwashers and failed to inform consumers that the products were defective, and "was in a superior position to know the details of the [d]efect"; yet Plaintiffs simultaneously allege that there were multiple publicly posted customer reviews that complained of the defect—which suggests that Defendant was not in a superior position—and does not provide particularized information as to how Defendant would have been in a superior position.  (D.E. 13 ¶¶ 70, 140–41.)  These allegations

are both conclusory and contradictory, thus are not sufficiently pleaded.  Furthermore, Plaintiffs fail to cogently plead how they will be damaged in the future, considering they "decided to replace the defective machine with a new dishwasher," (*Id.* ¶ 24), and can thus avoid any future harm.  *See Int'l Star Registry of Ill.*, 451 F. Supp. 2d at 991.  Plaintiff cannot change the fact that future harm cannot be established, and without a possibility of future harm, this claim cannot survive. Plaintiffs' IUDTPA claim is therefore dismissed with prejudice.

3. <u>New Jersey Consumer Fraud Act ("NJCFA") (Count III) and Common Law Fraud (Count VII) as to Rossidivito</u>

The NJCFA "is intended to protect consumers who purchase 'goods or services generally sold to the public at large.'"  *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057, 2008 WL 5381227, at *5 (D.N.J. Aug. 29, 2018) (quoting *Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. Super. Ct. App. Div. 1997)).  To bring a successful claim under the NJCFA, a plaintiff must show:  "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss."  *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7829, 2013 WL 5574626, at *7 (D.N.J. Oct. 9, 2013) (citing *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)).  Both claims are subject to heightened pleading, which requires a plaintiff to identify specific actions taken by the defendant, when and where those actions were taken, and the identity and role of individual actors participating in the allegedly fraudulent scheme.  *See, e.g.*, *Torres-Hernandez*, 2008 WL 5381227, at *5; *Riachi v. Prometheus Grp.*, No. 17-811, 2017 WL 2438838, at *3 (D.N.J. June 6, 2017) (noting that Rule 9(b)'s particularity requirement demands that a plaintiff "plead 'the who, what, when, where, and how: the first paragraph of any newspaper story'" (citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)); *see also* FED. R. CIV. P. 9(b).

To bring a claim for common law fraud under New Jersey law, a party must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 489 (D.N.J. 2018) (quoting *Gennari v. Weichert Co. Realtors*, A.2d 350, 367 (N.J. 1997)); *see also Verify Smart Corp. v. Bank of Am., N.A.*, No. 17-4248, 2021 WL 2549335, at *12 (D.N.J. June 17, 2021). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* (quoting *Frederico*, 507 F.3d at 200).

The Complaint does not provide the requisite level of specificity to adequately plead either of Rossadivito's fraud claims. Plaintiff makes generalized, conclusory allegations of fraudulent practices, alleging that Defendant "made material omissions concerning the [defect] by not fully and truthfully disclosing to its consumers the true nature of the Class Dishwashers," and that Defendant "issued a Service Bulletin to dealers of Class Dishwashers, though not consumers, in November 2018 regarding the [defect]." (D.E. 13 ¶ 103.) These allegations, however, do not specify unlawful conduct, and do not indicate what specific actions were taken, when they were taken, or where they occurred. Plaintiff fails to give particularized information about how Defendant may have known about the defect prior to purchase, and instead points to a Service Bulletin Defendant released long after Plaintiff's purchase. (*Id.*) The release of the Service Bulletin in and of itself does not suggest or indicate fraud on the part of Defendant, and any negative inference from the issuance of a Bulletin, which occurred long after Plaintiff purchased the dishwasher, is indiscernible and does not constitute a particularized allegation.

Because specificity is required when raising fraud claims, Rossidivito's NJCFA and common law fraud claims are dismissed.

E.   Unjust Enrichment (Count VIII)

    1.   Simner Plaintiffs

"To state a claim for unjust enrichment under Illinois law, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *O'Connor*, 477 F. Supp. 3d at 720 (quoting *Banco Panamericano, Inc. v. City of Peoria*, 880 F.3d 329, 333 (7th Cir. 2018)).  "When an unjust enrichment claim 'sounds in fraud,' Rule 9(b)'s particularity requirement applies."  *Id.* (quoting *Nieto v. Perdue Farms, Inc.*, No. 08-07399, 2010 WL 1031691, at *5 (N.D. Ill. Mar. 17, 2010)).  Importantly, while such a claim may arise independently, "where the claim rests on the same improper conduct alleged in another claim it will stand or fall with the related claim."  *Id.* (quoting *Krug v. Am. Family Mut. Ins. Co.*, 227 F. Supp. 3d 942, 946 (N.D. Ill. 2016)).

Here, the Simner Plaintiffs' claim sounds in fraud, thus it is subject to the same heightened pleading standard as the fraud claims.  *See O'Connor*, 477 F. Supp. 3d at 720 (quoting *Nieto*, 2010 WL 1031691, at *5)).  As with Plaintiffs' fraud claims, this claim is not pleaded with specificity and particularity.  Additionally, Plaintiffs' claim "re-allege[s] and incorporate[s] by reference the allegations contained in the preceding paragraphs of [the Complaint].  (D.E. 13 ¶ 218.)  Because Plaintiffs include contractual claims in the Complaint and incorporates those claims into the Unjust Enrichment claim, the claim cannot proceed because there is an express and "enforceable contractual obligation" that renders the Unjust Enrichment claim superfluous.  *Prudential Ins. Co.*

*of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 3d 619, 622–23 (N.D. Ill. 2008) (collecting cases). Plaintiffs' claim is tied to an express contract, thus is accordingly dismissed with prejudice.

2. Rossidivito

Unjust enrichment is an equitable cause of action that imposes liability when a "defendant received a benefit and . . . retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted). "To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege that '(1) at plaintiff[']s expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'" *Gov't Emps. Ins. Co. v. Ningning He, M.D.*, No. 19-9465, 2019 WL 5558868, at *6 (D.N.J. Oct. 29, 2019) (quoting *Arlandson*, 792 F. Supp. 2d at 711). Importantly, "[w]hen an individual purchases a consumer product from a third-party store and not the manufacturer, the purchaser has not conferred a benefit directly to the manufacturer such that the manufacturer could be found to have been unjustly enriched." *Id.* (quoting *Weske v. Samsung Elecs. Am., Inc.*, No. 10-4811, 2012 WL 833003, at *7 (D.N.J. Mar. 12, 2012)).

Here, Rossidivito does not allege that he purchased the dishwasher directly from Defendant. He alleges that he purchased the dishwasher from Home Depot. (D.E. 13 ¶ 27.) Therefore, Plaintiff cannot maintain an unjust enrichment claim and it is dismissed with prejudice.

## IV.   LEAVE TO AMEND

Defendant requests that the Court deny Plaintiffs' leave to amend the FAC because amendment would be futile and prejudicial. (D.E. 17-1 at 12.) While Plaintiffs have already amended their Complaint once, this is the first time that this Court has addressed the claims dispositively. Given that there is a general presumption in favor of allowing a plaintiff to amend its pleadings under Rule 15(a)(2), *Hunter v. Dematic USA*, No. 16-00872, 2016 WL 2904955, at

*6 (D.N.J. May 18, 2016), Plaintiffs are permitted leave to amend their complaint except where explicitly stated.  Plaintiffs do not have leave to amend the allegations and pursue the Simner Plaintiffs' IUDTPA claim (Count II); the Simner Plaintiffs' and Rossidivito's Breach of Implied Warranty of Merchantability claims (Count VI); and the Simner Plaintiffs' and Rossidivito's Unjust Enrichment claims (Count VIII), as amendment would be futile and they are thus dismissed with prejudice.  Plaintiffs are granted leave to amend the allegations concerning the Simner Plaintiffs' ICFA and Common Law Fraud claims (Counts I and VII); Rossidivito's NJCFA and Common Law Fraud claims (Counts III and VII); and the Simner Plaintiffs' and Rossidvito's MMWA claims (Count IV).  Finally, the Simner Plaintiffs' and Rossidivito's Breach of Express Warranty Claims, (Count V), may proceed as pleaded.

## V.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED in part**, **DENIED in part**.  Plaintiffs shall have thirty (30) days to file an amended complaint.  An appropriate order follows.

____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         Cathy L. Waldor, U.S.M.J.
            Parties

31