NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RACHEL SIMNER, ROBERT DOMASCHUK, and MICHAEL ROSSIDIVITO, individually and on behalf of all others similarly situated,

                 Plaintiffs,

v.

LG ELECTRONICS U.S.A., INC.,

                 Defendant.

Civil Action No: 21-13322(SDW)(CLW)

**OPINION**

May 1, 2023

**WIGENTON**, District Judge.

    Before this Court is Defendant LG Electronics U.S.A., Inc.'s ("LG" or "Defendant") Motion to Dismiss Plaintiffs Rachel Simner and Robert Domaschuk (the "Simner Plaintiffs"), and Michael Rossidivito's ("Rossidivito"), (collectively, "Plaintiffs") Second Amended Class Action Complaint ("SAC") pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 9(b). Jurisdiction is proper pursuant to 28 U.S.C. § 1332, 15 U.S. C. § 2301, et seq., and 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

    Defendant LG Electronics, Inc. is a Delaware corporation, headquartered in Englewood Cliffs, New Jersey. (D.E. 36 ¶ 15.) The Simner Plaintiffs are residents of Illinois, and Rossidivito is a resident of New Jersey. (*Id.* ¶¶ 16, 28.) On January 7, 2017, the Simner Plaintiffs purchased an LG-manufactured dishwasher, model LDF5545ST, from a Menards store in Naperville, Illinois,

1

for $629.10.  (*Id.* ¶ 17.)  On April 28, 2018, Rossidivito purchased an LG-manufactured dishwasher, model LDP6797BB, from a website for Home Depot, for $698.40.  (*Id.* ¶ 29.)  He also purchased a three-year extended warranty for the dishwasher.  (*Id.*)   Plaintiffs allege that both dishwasher models—which were "QuadWash-enabled dishwashers"—had "defective LED control panels."[1]  (*Id.* ¶ 1.)

    A.  The Simner Plaintiffs

When the Simner Plaintiffs sought to purchase a dishwasher, they researched different models online and allege that Defendant's website advertised the dishwasher model LDF5545ST as "[a]mong the most energy-efficient dishwashers in its class," which had "energy and water-saving features . . . [that] [would] help reduce [their] energy and water consumption."  (*Id.* ¶ 18 (first, third, and fourth alterations in original) (citing LG website).)  In early April 2017, about four months after the Simner Plaintiffs bought model LDF5545ST, the dishwasher began to turn off mid-cycle, they had to restart the circuit breaker to restart the appliance, and the dishwasher frequently stopped working.  (*Id.* ¶ 19.)  On April 4, 2017, the Simner Plaintiffs contacted Defendant to report the issue and request warranty service, and Defendant sent a repair technician to replace the dishwasher's control panel.  (*Id.* ¶ 20.)  In October 2017, the control panel began shutting off mid-cycle again.  (*Id.* ¶ 21.)  On October 5, 2018, approximately a year after the issue began to occur again, the Simner Plaintiffs hired an electrical services company to make sure their electric service was working properly, and the company confirmed that it was.  (*Id.* ¶ 22.)  After that confirmation, the Simner Plaintiffs contacted Defendant for additional assistance, but

---

[1] Plaintiffs refer to the dishwashers at issue as "Class Dishwashers."  (*Id.* ¶ 1.)  While a class has not yet been established at this point in the litigation, for the sake of simplicity this Court will refer to the dishwasher models with the control panels at issue as Class Dishwashers or simply as dishwashers.  Of note, the Class Dishwashers include models LDF5545ST and LDP6797BB, the specific models purchased by the Simner Plaintiffs and Rossidivito.  (*See* D.E. 37 at 17, n.8.)

Defendant would not send a technician without payment for the service. (*Id.* ¶ 23.) The Simner Plaintiffs opted not to pay for the service and instead requested that Defendant send a replacement control panel. (*Id.* ¶¶ 23–24.) Defendant initially agreed, but then declined to do so when the Simner Plaintiffs refused to pay for the device. (*Id.*) On June 10, 2020, the Simner Plaintiffs contacted Defendant again for service, and a company representative confirmed that the Simner Plaintiffs would have to pay for the technician and repair, which they refused to do. (*Id.* ¶ 25.) Thereafter, the Simner Plaintiffs attempted to return the dishwasher to Menards but were unsuccessful. (*Id.* ¶ 26.) Plaintiffs opted instead to replace the dishwasher with a new unit. (*Id.*)

  B. <u>Rossidivito</u>

Before Rossidivito purchased dishwasher model LDP6797BB on April 28, 2018, he had researched different models online and found that Defendant's website advertised the unit he purchased as "among the most energy-efficient dishwashers in its class." (*Id.* ¶¶ 29–30 (citing LG website).) On July 9, 2018, Rossidivito noticed that when he tried to put the dishwasher on another cycle, the control panel stopped working. (*Id.* ¶ 32.) He immediately notified Defendant about the problem. (*Id.* ¶ 33.) Defendant sent a repair technician on July 12, 2018, and on July 25, 2018 the technician replaced the control panel. (*Id.* ¶¶ 34–35.) On December 29, 2018, the control panel shut down again, and Rossidivito contacted Defendant for assistance. (*Id.* ¶ 36.) Defendant sent a third-party technician to replace the control panel again. (*Id.* ¶ 37.) In December 2019, the dishwasher malfunctioned again and Rossidivito contacted Defendant on January 4, 2020 for assistance. (*Id.* ¶¶ 38–39.) Defendant sent a technician, who replaced the dishwasher's motor. (*Id.* ¶¶ 39–40.) On April 1, 2020, the dishwasher's motor failed again, Rossidivito contacted Defendant for assistance, and a technician again repaired the motor. (*Id.* ¶¶ 41–42.) On April 8, 2021, the control panel shut off again, Rossidivito contacted Defendant for assistance, and a

company technician replaced the control panel again. (*Id.* ¶¶ 43–44.) On April 28, 2021, "Rossidivito's extended three-year warranty expired." (*Id.* ¶ 45.) On November 6, 2021, the control panel failed again. (*Id.* ¶ 46.) Because his warranty had expired, and because of the difficulties he had experienced with the dishwasher, Rossidivito did not contact Defendant for repair and instead purchased a new dishwasher. (*Id.* ¶¶ 46–47.)

C. <u>Allegations</u>

Plaintiffs allege that Defendant's "ubiquitous marketing campaigns lead consumers to believe that Class Dishwashers are high quality, efficient, and dependable," but the dishwashers "do not work as advertised or promoted." (*Id.* ¶¶ 58–59.) Plaintiffs further contend that the Class Dishwashers have an "internal design, assembly, and mechanical engineering" defect that manifests "during the expected useful life of the [d]ishwasher," and in turn deprives consumers of a functioning unit. (*Id.* ¶¶ 60–63; *see also* ¶¶ 83–85.) The defect, Plaintiffs assert, causes "water [to] seep[] into the [c]ontrol [p]anel," which causes a malfunction of the dishwasher. (*Id.* ¶ 60.)

Plaintiffs also maintain that Defendant "knew or had reason to know that the Class Dishwashers suffer from the [c]ontrol [p]anel [d]efect," but has failed to fix the defect, and has failed to reimburse consumers for repairs and replacement. (*Id.* ¶¶ 67–69.) Plaintiffs put forth that Defendant must have known of the control panel defect because it "tracks warranty repairs in order to identify emerging defect trends," "tests each and every component" of the appliances it prepares to sell, "employs authorized service technicians" who diagnose and repair the appliances it has sold, employs engineers who "monitor product qualit[y] by gathering relevant data and producing statistical reports," and issued a service bulletin about the control panel in 2018. (*Id.* ¶¶ 73–79.) The service bulletin that Defendant issued in 2018, Plaintiffs allege, "provided a purported solution to the [c]ontrol [p]anel [d]efect," which, in turn, suggests that Defendant was aware of the defect

4

before 2018. (*Id.* ¶¶ 80–84.) Plaintiffs contend that the purported solution, however, was ineffective. (*Id.* ¶ 85.) Plaintiffs allege that Defendant continued to market and sell the dishwashers despite knowing or having reason to know that the control panels were defective, (*id.* ¶¶ 102–04), and continued to conceal the existence of the defect from consumers, which should toll any statutes of limitations, (*id.* ¶¶ 105–20).

Plaintiffs note that Defendant provides a limited one-year warranty for the Class Dishwashers, which covers "defect[s] in materials or workmanship under normal home use . . . ." (*Id.* ¶¶ 90–91 (alterations in original) (citing Owner's Manual, LG).) Defendant also provides a five-year electronics and racks warranty, a ten-year Direct Drive motor warranty, and a limited lifetime tub warranty. (*Id.* at ¶ 91.) Plaintiffs argue that Defendant has violated the warranties in various ways, including failing to fix the control panel issue, charging for parts and labor after the warranty has expired, charging diagnostic and service fees, and providing ineffective and inadequate warranty repairs. (*Id.* ¶¶ 92–95.)

Finally, Plaintiffs allege that there are three potential classes pertaining to the class action allegations: (1) a Nationwide Class, which includes consumers in the United States who purchased one or more Class Dishwasher(s); or, in the alternative, (2) an Illinois Subclass, which includes consumers in Illinois who purchased one or more Class Dishwasher(s), and (3) a New Jersey Subclass, which includes consumers in New Jersey who purchased one or more Class Dishwasher(s) ("State Subclasses"). (*Id.* ¶ 121.)

D. Procedural History

On July 2, 2021, Plaintiffs filed a putative class action suit in this Court, asserting various claims. (*See* D.E. 1.) Defendant filed a Motion to Dismiss on October 7, 2021. (*See* D.E. 10.) On November 22, 2021, Plaintiffs filed a First Amended Complaint ("FAC"), (D.E. 13), asserting

various claims. (*See* D.E. 13.) Defendant moved to dismiss on January 13, 2022, and on August 8, 2022 ("August 8th Opinion"), this Court granted dismissal in part and denied in part. (*See* D.E. 17; D.E. 29; D.E. 30.) On September 21, 2022, Plaintiffs filed the SAC asserting the following claims: Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count I) (Simner Plaintiffs/Illinois Subclass); Violations of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Count II) (Simner Plaintiffs/Illinois Subclass); Violations of the New Jersey Consumer Fraud Act ("NJCFA") (Count III) (Rossidivito/New Jersey Subclass); Breach of Written Warranty Under the Magnuson-Moss Warranty Act ("MMWA") (Count IV) (Nationwide Class/State Subclasses); Breach of Express Warranty (Count V) (Nationwide Class/State Subclasses); Breach of Implied Warranty of Merchantability (Count VI) (Nationwide Class/State Subclasses); Common Law Fraud (Count VII) (Nationwide Class/State Subclasses); and Unjust Enrichment (Count VIII) (Nationwide Class/State Subclasses). (*See* D.E. 36). Defendant moved to dismiss on October 21, 2022, and the parties thereafter completed timely briefing. (D.E. 37; D.E. 40; D.E. 43.)

## II.   LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 235–36 (3d ed. 2004)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief" (quoting *Twombly*, 550 U.S. at 555)).

When considering a Motion to Dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  A plaintiff "alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"  *Park v. M & T Bank Corp.*, No. 09-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (alteration in original) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

7

### III. DISCUSSION[2]

At the outset, in its August 8th Opinion, this Court declined to dismiss Count V of the FAC, thus this Count may proceed as pleaded, as Defendant concedes. (D.E. 29 at 14–17; D.E. 37 at 10, n.1.) Conversely, the following claims in the FAC were dismissed with prejudice, thus this Court need not revisit these claims: Count II (Violation of IUDTPA); Count VI (Breach of Implied Warranty of Merchantability; and Count VIII (Unjust Enrichment).[3] (D.E. 29 at 17–18, 25–27, 29–31.) Additionally, Plaintiffs admit that the reasoning undergirding this Court's dismissal of Count IV (Breach of Written Warranty Under the Magnuson-Moss Warranty Act) has not changed, thus this Count remains dismissed for the reasons elucidated in this Court's August 8th Opinion.[4] (*Id.*) As for the remaining Counts, this Court addresses each in turn.

    A. <u>Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count I) and Common Law Fraud (Count VII) as to the Simner Plaintiffs</u>

"The ICFA 'is a regulatory and remedial statute intended to protect consumers, borrowers, and business[]persons against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). The statute

> prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material

---

[2] Citations of page numbers from the parties' briefs refer to the D.E. filing page numbers, not to each document's original page numbers.

[3] Plaintiffs note that they recognize that these claims were dismissed with prejudice, but they have included the claims in the SAC to preserve them for appeal. (D.E. 36 at 46, n.22)

[4] Plaintiffs note that they included the Count in the SAC to preserve it for appeal. (D.E. 36 at 46, n.22.)

8

> fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

*O'Connor*, 477 F. Supp. 3d at 717–18 (alterations in original) (quoting 815 ILL. COMP. STAT. § 505/2). To establish a claim under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; and (4) the defendant's conduct is the proximate cause of plaintiff's injury." *Vangsness v. Deutsche Bank Nat. Trust Co.*, No. 12-50003, 2013 WL 3031017, at *5 (N.D. Ill. June 17, 2013) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)). Such claims must be pleaded with specificity, pursuant to Rule 9(b). *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 822 (N.D. Ill. 2016) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014), *aff'd*, 845 F.3d 802 (7th Cir. 2017)). "In such cases, 'a plaintiff must allege with particularity the who, what, when, where, and how of the fraud or misrepresentation.'" *Id.* (quoting *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 909 (N.D. Ill. 2012)).

To adequately plead a common law fraud claim under Illinois law, a plaintiff must allege:

> (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his [or her] injury.

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 989 (N.D. Ill. 2006) (quoting *Trs. of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002)).

Additionally, a plaintiff must allege that a defendant had a duty to disclose the defect. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). That duty arises where either a plaintiff and a defendant are in a confidential or fiduciary relationship, or where the plaintiff "places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* The second kind of relationship "may arise by reason of friendship, agency, or experience." *Id.*

Here, the Simner Plaintiffs broadly allege that Defendant had "exclusive or superior knowledge of the defect," "intentionally concealed material information from consumers," "made misrepresentations that were rendered misleading," and "acted unscrupulously in a manner that is substantially oppressive and injurious to consumers." (D.E. 36 ¶ 136.) Additionally, the Simner Plaintiffs allege that Defendant "misrepresented that [the dishwashers] are energy efficient when they are not," due to the defect at issue, and assert that the Simner Plaintiffs "suffered ascertainable loss as a direct and proximate result of [Defendant's] unfair and deceptive acts and practices." (*Id.* ¶¶ 141, 143.) Defendant, according to the Complaint, had knowledge of the purported defect prior to the Simner Plaintiffs' purchase of their dishwasher because (1) consumers complained about the defect "on message boards, social media, and other websites," which Defendant likely monitored, (*id.* ¶¶ 69–72); (2) Service Bulletins, like the one Defendant issued in 2018 concerning the control panels, are usually "only issued after a significant number of complaints are made, and lengthy investigations and data analyses undertaken," and issuing such a bulletin makes "it . . . clear that [Defendant] was aware of the [defect] . . . well before Plaintiffs purchased their [dishwashers]," (*id.* ¶¶ 79–84); and (3) warranty claims, "pre- and post-release testing of [the dishwashers] and their constituent components," service technicians who repaired dishwashers and appliances manufactured by Defendant, plant-based quality assurance personnel who "monitor and

10

'[a]nalyze quality control test results,'" and "Quality Engineers who '[i]dentify[] current issues in the field and work to eliminate those issues'" likely would have alerted Defendant to the defect at issue, (*id.* ¶¶ 73–77).

When considering the Simner Plaintiffs' allegations in light of the heightened pleading requirement for each fraud claim, this Court finds that the allegations in the SAC are conclusory, do not include the "who, what, when, where, and how of the fraud or misrepresentation," and are not sufficiently particularized. *Hart*, 191 F. Supp. 3d at 822 (quoting *Thrasher-Lyon*, 861 F. Supp. 2d at 909).

The Simner Plaintiffs' claims in the SAC are largely similar to those in the FAC, except there is additional postulation about how Defendant *might* have known that there were issues with the dishwashers. There is not, however, any concrete, particularized information denoting such. The Complaint presumes that Defendant "likely"[5] knew there was knowledge of a defect in the Class Dishwashers before the Simner Plaintiffs purchased their unit (1) because several customers complained about the dishwashers—complaints that primarily occurred after the Simner Plaintiffs purchased their dishwasher, thus are largely irrelevant as to Defendant's knowledge of the defect, (*id.* ¶¶ 65–72), (2) because Defendant issued a 2018 Service Bulletin concerning the Control Panel—a Service Bulletin that was released more than a year after the Simner Plaintiffs purchased the dishwasher, thus is largely irrelevant as to Defendant's knowledge of the defect at the time of sale, (*id.* ¶¶ 78–84), and (3) because manufacturers of such goods often employ service technicians, quality assurance personnel, and quality engineers who would perform testing that could discover a defect—facts that do not specifically indicate Defendant's knowledge at the time of sale, but

---

[5] Plaintiffs argue that the pre-sale knowledge of the defect "is best evidenced by [Defendant's] issuance of a Service Bulletin and the *likely* years of work leading up to that and the production of a replacement part." (D.E. 40 at 11 (emphasis added).)

11

rather require attenuated assumptions based on third-party website job descriptions that do not bear upon what testing actually occurred on the particular dishwasher the Simner Plaintiffs purchased, (*id.* ¶¶ 73–77). Blanket supposition—which is based on speculation not undergirded by any known facts—is insufficient to maintain this claim. *See Hart*, 191 F. Supp. 3d at 822. The allegations in the SAC are substantially similar to those in the FAC in that Plaintiffs put forth *that* Defendant knew of issues with the dishwasher at the time of Plaintiffs' respective purchases and committed misrepresentation and deception, but still have not specifically pleaded *how* Defendant knew. The SAC instead relies upon conjecture that begs a leap of faith to attain the desired result. *See id.* When viewing the facts of the SAC in a favorable light and accepting them as true, *Phillips*, 515 F.3d at 231, the facts supporting the Simner Plaintiffs' fraud allegations are merely speculative and do not concretely support the allegation that Defendant had knowledge of the defect prior to the 2017 dishwasher purchase.[6]

Additionally, the allegations in the SAC, as with the similarly pleaded FAC, do not present facts that support a common law duty to disclose, either due to fiduciary relationship between the parties, or due to the Simner Plaintiffs placing their trust and confidence in Defendant, putting it in a position of influence and superiority. *See Connick*, 675 N.E.2d at 593. The Simner Plaintiffs generally allege that Defendant "had a duty to disclose the true quality of the Class Dishwashers because the knowledge of the [defect] and its details were known and/or accessible only to [Defendant]." (D.E. 36 ¶ 114; *see also id.* ¶¶ 216–28 (general fraud allegations).) This allegation does not provide information adequate to demonstrate that Defendant's relationship with the

---

[6] This Court declines to consider Defendant's puffing contention because in the absence of sufficiently pleaded allegations, such analysis would be superfluous.

12

Simner Plaintiffs is or was of a nature giving rise to a duty to disclose. *See Connick*, 675 N.E.2d at 593.

Consequently, this Court finds that the allegations pertaining to these fraud counts are conclusory and insufficiently pleaded and are therefore dismissed.

    B. <u>New Jersey Consumer Fraud Act ("NJCFA")[7] (Count III) and Common Law Fraud (Count VII) as to Rossidivito</u>

The NJCFA "is intended to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 08-1057, 2008 WL 5381227, at *5 (D.N.J. Aug. 29, 2018) (quoting *Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. Super. Ct. App. Div. 1997)). To bring a successful claim under the NJCFA, a plaintiff must show: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7829, 2013 WL 5574626, at *7 (D.N.J. Oct. 9, 2013) (citing *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)). Both claims are subject to heightened pleading, which requires a plaintiff to identify specific actions taken by the defendant, when and where those actions were taken, and the identity and role of individual actors participating in the allegedly fraudulent scheme. *See, e.g.*, *Torres-Hernandez*, 2008 WL 5381227, at *5; *Riachi v. Prometheus Grp.*, No. 17-811, 2017 WL 2438838, at *3 (D.N.J. June 6, 2017) (noting that Rule 9(b)'s particularity requirement demands that a plaintiff "plead 'the who, what, when, where, and how: the first paragraph of any newspaper story'" (citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)); *see also* FED. R. CIV. P. 9(b).

---

[7] Of note, Plaintiffs concede that "it would be futile to re-plead claims for injunctive relief under the NJCFA and instead pursue only monetary damages." (D.E. 40 at 6.)

To bring a claim for common law fraud under New Jersey law, a party must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 489 (D.N.J. 2018) (quoting *Gennari v. Weichert Co. Realtors*, A.2d 350, 367 (N.J. 1997)); *see also Verify Smart Corp. v. Bank of Am., N.A.*, No. 17-4248, 2021 WL 2549335, at *12 (D.N.J. June 17, 2021). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Citizens United Reciprocal Exch.*, 321 F. Supp. 3d at 489 (quoting *Frederico*, 507 F.3d at 200). Additionally, "a party has no duty to disclose information to another party in a business transaction unless a fiduciary relationship exists between them, unless the transaction itself is fiduciary in nature, or unless one party 'expressly reposes a trust and confidence in the other.'" *Flynn-Murphy v. Jaguar and Rover N. Am.*, No. 20-14464, 2021 WL 5448716, at *10 (quoting *N.J. Econ. Dev. Auth. v. Pavonia Rest.*, *Inc.*, 725 A.2d 1133, 1139 (N.J. Super. Ct. App. Div. 1998) (internal citation omitted)).

When viewing the SAC in a light favorable to Rossidivito, *Phillips*, 515 F.3d at 231, the SAC does not provide the requisite level of specificity to adequately plead either of Rossidivito's fraud claims. The SAC contains generalized, conclusory allegations of fraudulent practices, as discussed above in Part III, Section A. The SAC does not contain particularized information about how Defendant may have known about the defect prior to Rossidivito's purchase of the dishwasher, and instead points to (1) customer complaints, many of which occurred after Rossidivito's purchase and were posted to third-party websites, (D.E. 36 ¶¶ 69–72); (2) the issuance of a 2018 Service Bulletin more than six months after Rossidivito's purchase, (*id.* ¶ 80);

and (3) employment of quality control technicians and engineers to diagnose issues, (*id.* 76–77), as "support[ing] a reasonable inference that [Defendant] learned of the [d]efect well before Plaintiffs purchased . . . Class Dishwashers." (D.E. 40 at 13–14.) The vague pleading fails to establish fraud under NJCFA or common law fraud and does not include particularized allegations, but rather necessitates leaps of inference based on speculation. *See Riachi*, 2017 WL 2438838, at *3.

Furthermore, the SAC generally alleges that Defendant owed Rossidivito a duty to disclose, (D.E. 36 ¶ 227), but fails to set forth particularized facts that demonstrate that Rossidivito and Defendant conducted a transaction that was fiduciary in nature, or that Rossidivito "expressly repose[d] a trust and confidence" in Defendant. *Flynn-Murphy*, 2021 WL 5448716, at *10 (quoting *N.J. Econ. Dev. Auth.*, 725 A.2d at 1139).

Specificity is required when giving a factual basis for fraud claims. *See* FED. R. CIV. P. 9(b). Because the facts presented in the SAC changed little from those presented in the FAC, the facts added to the SAC fail to indicate "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation," *Citizens United Reciprocal Exch.*, 321 F. Supp. 3d at 489, and the claims are based in vague speculation rather than in concrete and particularized information, Rossidivito's NJCFA and common law fraud claims are dismissed.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. An appropriate order follows.

  /s/ Susan D. Wigenton  
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk  
cc:         Cathy L. Waldor, U.S.M.J.  
            Parties